UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA ANN SLINGERLAND,

                               Plaintiff,

                    v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                               Defendant.

**DECISION
and
ORDER**

**18-CV-1228F**
(**consent**)

_____

APPEARANCES:             LAW OFFICES OF KENNETH HILLER, PLLC
                                   Attorneys for Plaintiff
                                   KENNETH R. HILLER, and
                                   JUSTIN DAVID JONES, of Counsel
                                   6000 North Bailey Avenue, Suite 1A
                                   Amherst, New York 14226

                                   JAMES P. KENNEDY, JR.
                                   UNITED STATES ATTORNEY
                                   Attorney for Defendant
                                   Federal Centre
                                   138 Delaware Avenue
                                   Buffalo, New York 14202
                                         and
                                   JOSHUA L. KERSHNER,
                                   Special Assistant United States Attorney, of Counsel
                                   Social Security Administration
                                   Office of General Counsel
                                   26 Federal Plaza, Room 3904
                                   New York, New York 10278
                                         and
                                   AVNI DINESH GANDHI,
                                   Special Assistant United States Attorney, of Counsel
                                   Social Security Administration
                                   Office of General Counsel
                                   61 Forsyth Street, S.W.
                                   Suite 20T45
                                   Atlanta, Georgia 30303

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2019, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 11). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 28, 2019, 2018 (Dkt. 7), and by Defendant on August 8, 2019 (Dkt. 9).

## BACKGROUND

Plaintiff Melissa Ann Slingerland ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on July 20, 2018, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI" or "disability benefits"). AR[2] at 861-84. Plaintiff alleges she became disabled on November 20, 2009, AR at 122, based on inability to sit or stand for long periods, lift anything over eight pounds, walk long distances, or bend and twist. AR at 125. Plaintiff's application initially was denied on May 2, 2012, AR at 66, and, at Plaintiff's timely request, on May 30, 2013, an administrative hearing was held in Buffalo, New York, before administrative law judge ("ALJ") Bruce Mazzarella ("ALJ Mazzarella"), AR at 24-62, who, on August 22, 2013, issued a decision ("first ALJ decision"), unfavorable to Plaintiff. AR at 10-23. Plaintiff timely appealed the first ALJ decision to the Appeals Council which, on January 28, 2015, issued a decision denying Plaintiff's request for review, rendering ALJ

---

[2] References to "AR" are to page s of the Administrative Record electronically filed in 14 parts by Defendant on March 28, 2019 (Dkts. 5 through 5-14).

2

Mazzarella's first ALJ decision the Commissioner's final decision for the time being. AR at 1-5. Plaintiff then commenced on March 26, 2015, a civil action in United States District Court for the Western District of New York, *Slingerland v. Colvin*, 15-CV-261W (W.D.N.Y.), seeking review of the first ALJ decision. On November 16, 2015, District Judge Elizabeth A. Wolford approved the parties' Stipulation and Order for Remand, remanding the matter to the Commissioner for further proceedings. *Slingerland v. Colvin*, 15-CV-261W, Dkt. 11 (W.D.N.Y. Nov. 16, 2015) ("November 16, 2015 Remand Stipulation").

Subsequent to the remand, on April 20, 2018, a second administrative hearing was held in Buffalo, New York, before ALJ Paul Georger ("the ALJ") ("second administrative hearing"). AR at 980-1011. Appearing and testifying at the second administrative hearing were Plaintiff, represented by Nicholas DiVirgilio, Esq., and vocational expert Rachel Ducharme ("V.E."). On July 25, 2018, the ALJ issued a decision denying Plaintiff's claim. AR at 864-79 ("second ALJ decision"). Plaintiff then commenced this action on November 2, 2018, seeking judicial review of the second ALJ's decision.

On May 28, 2019, Plaintiff filed a motion for judgment on the pleadings (Dkt. 7) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum"). On July 18, 2019, Defendant filed a motion for judgment on the pleadings (Dkt. 9) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 9-1) ("Defendant's Memorandum"). On August 8, 2019, Plaintiff filed Plaintiff's Reply to

Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. 10) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[3]

Plaintiff Melissa Ann Slingerland ("Plaintiff" or "Slingerland"), born March 28, 1981, was 28 years old as of November 20, 2009, her alleged disability onset date ("DOD"), and 37 as of July 25, 2018, the date of the second ALJ decision. AR at 122, 125, 879, 987. Plaintiff attended high school through 10th grade, was in special education classes, has not obtained a graduate equivalency degree, nor had any vocational training. AR at 126, 987-88. Plaintiff's work history includes 10 years as a cashier and supervisor, and less than one year in customer service. AR at 126, 988-90.

Plaintiff's disability benefits claim is essentially based on knee and back impairments. In particular, Plaintiff has a history of bilateral chondromalacia of the patella (condition where cartilage on underside of kneecap softens and deteriorates), for which she underwent right knee surgery in 2003, and left knee surgery in 2005. AR at 507, 1430. In 2013 and 2015, Plaintiff underwent right and left knee "redo" surgeries. AR at 1430. Plaintiff continues to complain that her knees give out in cold weather and lock when climbing stairs. *Id.*

Plaintiff attributes her back impairment to an injury sustained when she last worked on November 20, 2009, at her cashier/supervisor job, and Plaintiff bent over to

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

4

pick up an object and experienced severe back pain preventing Plaintiff from straightening up. AR at 157. Plaintiff immediately sought chiropractic treatment from Anthony V. Morgante, D.C. ("Dr. Morgante"), who diagnosed Plaintiff with lumbar disc syndrome, lumbar segmental dysfunction, and myospasm, and opined in connection with Plaintiff's state Worker's Compensation claim that Plaintiff had a "severe injury" and would be "off work until further notice." AR at 195-203. A November 25, 2009 MRI of Plaintiff's lumbar spine revealed small central posterior disc herniation/protrusion mildly effacing the thecal sac at L5-S1, and mild scoliosis with convexity to the right side. AR at 211. Plaintiff received conservative treatment for her back injury, including 28 chiropractic treatments from Dr. Morgante between November 20, 2009 and January 27, 2010, AR at 195-200, and twice weekly physical therapy sessions from February 1, 2010 through March 31, 2010, AR at 564-609, when Plaintiff reported "feeling better overall and able to move with much less pain and discomfort, although she still feels 'limited' in her daily activities," and Plaintiff's overall condition was indicated as "improving." AR at 596. Plaintiff's overall rehabilitation potential was assessed as "good," and Plaintiff was to continue with rehabilitative therapy in conjunction with a home exercise program. AR at 598. A February 24, 2010 MRI of Plaintiff's lumbar spine showed no findings of discitis (inflammation that develops between the intervertebral discs of the spine), and minimal disc bulge at L4-5. AR at 281.

Much of Plaintiff's treatment for her back impairment was received at Buffalo Spine and Sports Institute from orthopedist Raul M. Llanos, D.O. ("Dr. Lanos"), and registered physician assistants ("RPA") Jodi Swearingen ("RPA Swearingen"), Kristen M. Salvamoser ("RPA Salvamoser"), and Paul Olizarowicz ("RPA Olizarowicz").

5

Subsequent to the November 15, 2015 Remand Stipulation, Plaintiff underwent an orthopedic examination by consultative examiner Nikita Dave, M.D. ("Dr. Dave"), a physical medicine and rehabilitation specialist. AR at 1430-41. Upon physically examining Plaintiff, Dr. Dave diagnosed Plaintiff with low back pain, bilateral knee pain, and nocturnal calf cramps, and provided a medical source statement that "[t]here may be moderate limitations for prolonged sitting, standing, bending, and twisting through the lumbar spine, and lifting, carrying, pushing, pulling of heavy objects. [Plaintiff] may benefit from rest intervals, allowing sitting with back support, and/or to change positions. Avoid ladders and heights." AR at 1433. Dr. Dave's consultative opinion was accompanied by a Medical Source Statement of Ability to do Work Related Activities ("Physical"), which is largely a "check-the-box" form on which Dr. Dave indicated Plaintiff could frequently lift and carry up to 10 pounds. AR at 1434. In an eight-hour workday, Plaintiff could sit for four hours, stand for three hours, and walk for three hours, and Plaintiff ambulated without use of a cane. AR at 1435. Plaintiff was limited to frequently pushing and pulling with her right and left hands, but was not otherwise limited as to her upper extremities, including reaching overhead or in other directions, handling, fingering, and kneeling, and Plaintiff could occasionally operate foot controls. AR at 1436. With regard to postural activities, Plaintiff could frequently climb stairs and ramps, stoop, and crouch, occasionally balance and crawl, but never climb ladders or scaffolds. AR at 1437. Plaintiff also had environmental limitations including never working around unprotected heights, moving mechanical parts, or operating a motor vehicle, could tolerate occasional exposure to extreme cold and heat, and frequent exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, and

vibrations, and could work in conditions of quiet to moderate noise.  AR at 1438.  Dr. Dave further indicated Plaintiff could engage in such activities as shopping, traveling without a companion, ambulate without assistive devices, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle or use paper/files.  AR at 1439.

As of the April 20, 2018 administrative hearing, Plaintiff lived with her husband and two children, had a driver's license and still drove.  AR at 987.  Plaintiff sometimes applied ice to her back, AR at 992-93, and medications for her back impairment included Ibuprofen (non-steroidal anti-inflammatory), and Flexeril (muscle spasms).  AR at 993-94.  Plaintiff testified she sometimes had trouble understanding written and oral instructions and maintaining concentration and attention, AR at 995, yet used a home computer to access social media on the internet for an hour each day.  AR at 996.  Plaintiff described a typical day as waking up at 5:00 A.M., making breakfast for her youngest daughter before school, showering, eating, watching the news, then spending an hour on the computer, reading for 2 ½ to 3 hours a day, and preparing dinner for her husband and daughters.  AR at 997-1000.  Plaintiff could tend to most personal care activities, but was sometimes hampered by pain.  AR at 998.  Plaintiff's husband and daughters assisted with household chores like carrying the laundry basket down stairs, and grocery shopping.  AR at 998-99.  Plaintiff also enjoyed swimming which helped her back.  AR at 999.  Plaintiff estimated she could walk around one block before experiencing back and knee pain.

## **DISCUSSION**

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by

---

[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the disability insured status requirements through March 31, 2010, AR at 867, has not engaged in SGA since November 20, 2009, her alleged disability onset date, *id.*, suffers from the severe impairments of degenerative disc disease of the lumbar spine, bilateral chondromalacia of the patella, and medial meniscus tears with bilateral knee surgery residuals, *id.* at 867, but that a right thumb sprain for which Plaintiff was treated caused no more than a minimal degree of limitation in Plaintiff's ability to work and, thus, by definition is not severe, where as alleged mental health symptoms for which Plaintiff was not treated, including anxiety, panic attacks causing trouble with memory, attention, concentration, and with written and oral instructions, did not establish a medically determinable impairment.  AR at 867-68.  Nor does Plaintiff have an impairment or combination of

impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 868, but for the relevant period from Plaintiff's alleged disability onset date of November 20, 2009, through Plaintiff's date last insured on March 31, 2010, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except Plaintiff can only occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, crouch and crawl, never work at unprotected heights or around moving mechanical parts, never operate a motor vehicle, occasionally work in humidity, wetness, in dust, odors, fumes and pulmonary irritants, extreme heat and extreme cold, and frequently in vibrating conditions and in quiet noise. AR at 868-77. The ALJ further found Plaintiff unable to perform any PRW, AR at 877, but given Plaintiff's age, 29 as of the date last insured, limited education, ability to communicate in English, no transferability of job skills, and RFC through her date last insured, jobs existed in the national economy Plaintiff could perform including as a food and beverage order clerk and a surveillance system monitor such that Plaintiff, between her disability onset date and date last insured, was not disabled as defined under the Act. AR at 877-78.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ erred at step four in evaluating Plaintiff's RFC by improperly relying solely on Dr. Dave's consultative examination of November 9, 2017, more than seven years after Plaintiff's date last insured, rather than obtaining a retrospective medical opinion or relying on one of the numerous other opinions rendered closer in time to the relevant period, Plaintiff's Memorandum at 19-24, and the ALJ also failed to include in the hypotheticals posed to the V.E. all the limitations

11

identified by Dr. Dave.  *Id.* at 2-30.  Defendant counters with emphasizing this case involves a short window of time in which Plaintiff had to establish disability, specifically, between her alleged disability onset date of November 20, 2009, and her date last insured of March 31, 2010, Defendant's Memorandum at 9, and substantial evidence in the record supports the ALJ's finding that Plaintiff was not disabled on or before the date last insured.  *Id.* at 10-14.  In reply, Plaintiff repeats her arguments that in assessing Plaintiff's RFC, the ALJ improperly relied on a consultative examination rendered more than seven years after Plaintiff's date last insured, Plaintiff's Reply at 1-6, and failed to reconcile the RFC determination with Dr. Dave's opinion.  *Id.* at 6-8.  There is no merit to Plaintiff's arguments.

With regard to Plaintiff's argument that at step four, the ALJ's limited consideration of numerous medical opinions rendered by treating sources and sole reliance on Dr. Dave's November 9, 2017 opinion rendered more than seven years after Plaintiff's date last insured was harmful error, Plaintiff's Memorandum at 19-24, a plain reading of the second ALJ decision establishes the ALJ did not solely rely on Dr. Dave's opinion; rather, Dr. Dave's findings were consistent with the functional assessments of other treating sources.  *See, e.g.*, AR at 378-80 (physical medicine and rehabilitation specialist Michael C. Geraci, Jr., M.D. ("Dr. Geraci"), opining on December 7, 2009, three weeks after Plaintiff's work injury, that Plaintiff walked with antalgic gait (limp), could not squat, lumbar spine range of motion ("ROM") was decreased, but sacroiliac joint motion tests and hip range of motion were normal, strength, deep tendon reflexes, and sensory exams were normal, and leg lengths were equal, and assessing Plaintiff's prognosis as "Good"); and AR at 276 (December 22, 2009 examination by Plaintiff's

12

primary care physician[6] at Family Care Physicians with objective findings that Plaintiff had "no signs of apparent distress present," "stands comfortably erect and sits comfortably," walks with a normal gait, has normal posture and muscle tone, straight leg raising test is negative bilaterally, lower extremities showed grossly intact muscle strength and sensation, normal muscle tone bilaterally, with "brisk and symmetrical" Achilles and patellar deep tendon reflexes). These findings are consistent with Dr. Dave's November 9, 2017 findings that Plaintiff had some decreased ROM in her lumbar spine, but straight leg raising test was negative, and lower extremities showed full ROM bilaterally, full strength, no muscle atrophy or sensory abnormality, reflexes physiologic and equal, no joint effusion, inflammation or instability but some diffuse joint tenderness of the right knee. AR at 1432. Accordingly, the earlier examination findings by Plaintiff's other treating sources are consistent with those of Dr. Dave.

It is significant that the medical source statements finding Plaintiff totally disabled as to her PRW, but not as to all work, were rendered in connection with Plaintiff's Worker's Compensation claim. *See, e.g.*, AR at 813 (orthopedist Edward D. Simmons, M.D. ("Dr. Simmons"), finding Plaintiff's "ongoing symptoms remain causally related to the work injury on November 20, 2010," and that Plaintiff "has a permanent total disability with regards to her regular work and a marked partial disability with regards to all work."), and AR at 453-54 (RPA Swearingen assessing Plaintiff on January 4, 2012, with a "temporary impairment" defined as "Mild-Moderate (33.33%)"). Statements of disability rendered in connection with Worker's Compensation claims are not entitled to any significant weight with regard to Social Security disability proceeding because "the

---

[6] The physician's name is illegible.

13

SSA's disability process is different from the process for determining entitlement to Worker's Compensation benefits, and it employs significantly different standards." *Donahue v. Colvin*, 2018 WL 2354986, at * 3 (W.D.N.Y. May 24, 2018) (citing 20 C.F.R. §§ 404.1504, 419.904 (establishing that an ALJ is not bound by the disability findings of any other agency)). Moreover, none of Plaintiff's treating sources opined Plaintiff was totally disabled from all work for at least 12 months. *See*, *e.g.*, AR at 494 (Dr. Llanos assessing Plaintiff on March 15, 2011 with a temporary impairment that was "mild (25%).").

Further, much of the opinion evidence on which Plaintiff relies pertains to the period after Plaintiff's last date insured, *i.e.*, March 31, 2010, contrary to the relevant statutes requiring Plaintiff establish she became disabled prior to the expiration of her insured status. 42 U.S.C. §§ 416(i), 423(c). Such evidence includes, for example, the treatment records and opinions of pain management specialist Eugene J. Gosy, M.D. ("Dr. Gosy"), who treated Plaintiff from February 28, 2012 to July 30, 2013, AR at 426-31, 510-56, 1138-56, Dr. Simmons who treated Plaintiff from January 6, 2011 through August 13, 2012, AR at 395-426, 506-08, and Dr. Llanos who treated Plaintiff on March 15, 2011, through October 5, 2011. AR at 494 (March 15, 2011), 486 (April 21, 2011), 480 (June 1, 2011), 475 (July 13, 2011), 470 (August 24, 2011), and 465 (October 5, 2011). Because Plaintiff did not even commence treatment with these physicians until well after her date last insured, their medical findings cannot be used to establish Plaintiff's disability as of her date last insured. *See Clark v. Saul*, __ F.Supp.3d __, 2020 WL 1224641, at ** 8-9 (S.D.N.Y. Mar. 13, 2020) (finding ALJ failure to consider

opinions from physicians that did not relate to the relevant period of time, but pertained to the period after the plaintiff's last date insured was not error) (citing cases).

Plaintiff's assertion that the ALJ should have contacted another of Plaintiff's treating sources to obtain a "retrospective" opinion, Plaintiff's Memorandum at 23-24, essentially seeks further development of the record which is only required to fill in gaps. *See Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) ("where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate" (citing and quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) ("when 'further findings would so plainly help to assure the proper disposition of [the] claim, we believe that remand is particularly appropriate.'")). Here, even without Dr. Dave's opinion, there are no gaps because, as discussed above, Discussion, *supra*, at 12-13, the statements from Plaintiff's other treating sources are largely consistent with the ALJ's RFC assessment such that remand for a retrospective opinion is not necessary.

The ALJ's assessment of Plaintiff's RFC at step four thus is supported by substantial evidence in the record.

Plaintiff also argues the RFC fails to account for all the limitations imposed by Dr. Dave, specifically, the need to incorporate into the hypothetical posed to the V.E. Dr. Dave's opinion that "Plaintiff would need 'rest intervals, allowing sitting with back support, and/or to change positions.'" Plaintiff's Memorandum at 26 (quoting AR at 1433). According to Plaintiff, the ALJ further erred by failing to explain why he did not account for these additional limitations. *Id*. at 26-27. In response, Defendant maintains the relevant portion of Dr. Dave's opinion was equivocally expressed, specifically, that

Dr. Dave opined Plaintiff "*may* benefit" from such additional limitations, Defendant's Memorandum at 14 (referencing AR at 1433) (italics added), rendering the statement "speculative and vague." *Id.* The ALJ further argues Dr. Dave, on the check-the-box form accompanying her opinion, clarified that Plaintiff could sit for up to four hours, stand for up to two hours at a time and three hours in total, and walk for up to two hours at a time and three hours total. *Id.*

As Defendant argues, Dr. Dave's Medical Source Statement contains equivocations, including that "[t]here *may be* moderate limitations for prolonged sitting, standing, bending and twisting through the lumbar spine . . . . She *may* benefit from rest intervals, allowing sitting with back support, and/or to change positions." AR at 1432-33 (italics added). Significantly, such equivocally suggested limitations need not be incorporated into hypotheticals to the V.E. *See Kunkel v. Comm'r of Soc. Sec.*, 2013 WL 4495008, at * 21 (W.D.N.Y. Aug. 20, 2013) (finding ALJ not required to include in hypothetical posed to vocational expert an examining physician's equivocal suggestions of what might benefit the plaintiff in attempting to work). The ALJ also explained that Dr. Dave's opinion was generally consistent with the other medical evidence in the record, particularly evidence pertaining to the relevant time period. *See Picone v. Colvin*, 2015 WL 5126076, at * 6 (W.D.N.Y. Sept. 1, 2015) (finding ALJ properly relied on consultative examiner's opinion that "was generally consistent with other medical evidence of record"). Furthermore, insofar as Dr. Llanos assessed Plaintiff on March 15, 2011, as needing to avoid sitting and standing for more than 30 minutes at a time, AR at 494, the ALJ did pose to the V.E. the need to stretch and walk away from a work station every half hour for five minutes, with the V.E. responding Plaintiff would remain

employable. AR at 1010. This is consistent with the V.E.'s testimony that customary tolerance for off-task time is a maximum of 15% within an 8-hour workday, AR at 1008, given that a five-minute break after every 30 minutes would have Plaintiff off-task 13.5 % of an eight-hour workday.

Accordingly, the ALJ did not err by failing to incorporate a need to change positions at will into the hypothetical posed to the V.E., and on which the ALJ relied in determining that other jobs existed in the national economy that Plaintiff could perform.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 9) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: March 23rd, 2020
             Buffalo, New York